112 F.3d 392
 97 Cal. Daily Op. Serv. 2846, 97 Daily Journal
D.A.R. 5045
Todd Lewis ASHKER, Plaintiff-Appellee,
v.
CALIFORNIA DEPARTMENT OF CORRECTIONS, Defendant,
and
Steve Brodeur; Alex Astorga, M.D., Defendants-Appellants.
 No. 96-15135.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 3, 1997.
Decided April 18, 1997.
 
 George Prince, Deputy Attorney General, San Francisco, California, for defendants-appellants.
 Herman A.D. Franck, V, and Stephen T. Gargaro, Franck & Franck, San Francisco, California, for plaintiff-appellee.
 Appeal from the United States District Court for the Northern District of California, Claudia Wilken, District Judge, Presiding. D.C. No. CV-91-03952-CW.
 Before: REINHARDT, HALL and THOMPSON, Circuit Judges.
 DAVID R. THOMPSON, Circuit Judge:
 
 
 1
 Todd Lewis Ashker, an inmate at Pelican Bay State Prison in California, sued prison officials Steve Brodeur and Dr. Alex Astorga (1) under 42 U.S.C. § 1983, alleging the officials violated the Eighth Amendment's cruel and unusual punishment clause, and (2) under California state tort law for assault and battery and medical malpractice.[1] A jury found against Ashker on his federal section 1983 claims, but in favor of him on his supplemental state tort claims. Brodeur and Astorga appeal. They contend the Eleventh Amendment bars Ashker's state tort claims.
 
 
 2
 We have jurisdiction under 28 U.S.C. § 1291 and we affirm. We conclude that Ashker sued Brodeur and Astorga in their individual capacities, and as a result the Eleventh Amendment does not bar Ashker's state law claims.
 
 FACTS
 
 3
 In October 1990, Ashker got into a fist fight with another inmate. To stop the fight, Correctional Officer Brodeur shot Ashker in the arm with an assault rifle. The surgeon who treated Ashker recommended that he be shipped out to a non-prison hospital for immediate treatment. Nevertheless, the prison infirmary doctors, under Dr. Astorga's supervision, placed a cast on Ashker's arm, but did not otherwise attend to his injury.
 
 
 4
 Ashker developed an aneurysm in his arm. Prison officials ignored his repeated requests for medical care, and left him in a dirty cell for almost two months. Finally, the aneurysm in Ashker's arm exploded. Ashker was then flown to a non-prison hospital for emergency surgery.
 
 
 5
 Ashker sued Brodeur and Astorga under 42 U.S.C. § 1983, alleging that Brodeur and Astorga violated the Eighth Amendment's prohibition against cruel and unusual punishment. Ashker also included in his complaint several supplemental state tort claims. Two of these supplemental claims survived Brodeur and Astorga's pretrial motions: (1) assault and battery against Brodeur, and (2) medical malpractice against Astorga. The district court exercised supplemental jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367.
 
 
 6
 In their answer to Ashker's first amended complaint, and in their pretrial statement, Brodeur and Astorga raised the affirmative defense of Eleventh Amendment immunity. However, Brodeur and Astorga never litigated the Eleventh Amendment issue in the district court, and they never asked the district court to rule on the issue.
 
 
 7
 The jury returned a verdict against Ashker on his section 1983 claims, but found in his favor on the two supplemental state law claims. The jury awarded Ashker $175,000 for assault and battery, and $50,000 for medical malpractice. The court entered judgment in Ashker's favor in the amount of $225,000. This appeal followed.
 
 DISCUSSION
 
 8
 Ashker first contends that we lack jurisdiction to consider Brodeur and Astorga's Eleventh Amendment immunity defense because they did not litigate that defense in the district court. We disagree.
 
 
 9
 In Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Supreme Court held that a court of appeals may consider whether the Eleventh Amendment bars a suit against state officers even when the officers fail to raise the Eleventh Amendment defense in the district court. Id. at 677-78, 94 S.Ct. at 1362-63. The Court observed that "the Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court." Id. at 678, 94 S.Ct. at 1363; see also ITSI TV Productions, Inc. v. Agricultural Ass'ns, 3 F.3d 1289, 1291 (9th Cir.1993). Accordingly, we have the discretion to exercise jurisdiction to consider the Eleventh Amendment immunity issue, and we do so.
 
 
 10
 Even though the Eleventh Amendment immunity defense may be raised for the first time on appeal, Ashker contends Brodeur and Astorga waived the defense by failing to pursue it in the district court. The best support for Ashker's argument comes from the Supreme Court's dicta in Blatchford v. Native Village of Noatak, 501 U.S. 775, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991), in which the Court observed that, in another case, Moe v. Confederated Salish and Kootenai Tribes, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976), the state of Montana had waived its Eleventh Amendment immunity because it "had not objected in this Court on sovereign immunity grounds." Blatchford, 501 U.S. at 785 n. 3, 111 S.Ct. at 2584 n. 3; see also ITSI TV, 3 F.3d at 1291.
 
 
 11
 Balanced against this dicta from Blatchford is the well-established general rule that states cannot easily waive their sovereign immunity. See Micomonaco v. State of Washington, 45 F.3d 316, 319 (9th Cir.1995); Coeur d'Alene Tribe of Idaho v. State of Idaho, 42 F.3d 1244, 1249 (9th Cir.1994), cert. granted in part on other grounds, --- U.S. ----, 116 S.Ct. 1415, 134 L.Ed.2d 541 (1996), cert. denied in part, --- U.S. ----, 116 S.Ct. 1416, 134 L.Ed.2d 542 (1996); Atascadero State Hospital v. Scanlon, 473 U.S. 234, 239-40, 105 S.Ct. 3142, 3146, 87 L.Ed.2d 171 (1985). Typically, "[w]aiver of Eleventh Amendment immunity by a state will be found 'only where stated by the most express language or by such overwhelming implication from the text [of a state statute] as [will] leave no room for any other reasonable construction.' " Micomonaco, 45 F.3d at 319 (quoting Atascadero, 473 U.S. at 239-40, 105 S.Ct. at 3146).
 
 
 12
 Here, Brodeur and Astorga did not waive the defense of sovereign immunity under the Eleventh Amendment. They "objected [to Ashker's first amended complaint] on sovereign immunity grounds", in their answer and pretrial statement in the district court, and they asserted the defense in their briefs filed in this court. If the Eleventh Amendment immunity defense ever was available to Brodeur and Astorga, they did not waive it.
 
 
 13
 Whether the Eleventh Amendment immunity defense was available to Brodeur and Astorga is the fundamental issue in this case. Ashker contends Brodeur and Astorga lack standing to assert the defense, because an Eleventh Amendment defense can only be asserted by the State, and the State is not a party to this proceeding and has never asserted the defense. In response to this contention, Brodeur and Astorga argue they are merely nominal defendants, the State is the real party in interest which will be called upon to pay any judgment against them, and as a result they have standing to assert the Eleventh Amendment as a defense. See Edelman, 415 U.S. at 663, 94 S.Ct. at 1355 (observing that "[i]t is ... well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment.").
 
 
 14
 Resolution of the standing question depends upon whether Brodeur and Astorga were sued in their individual capacities, and if so whether they were merely nominal defendants and the State was the real party in interest.
 
 
 15
 In Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), the Supreme Court held that the Eleventh Amendment barred a federal district court from hearing a supplemental state law claim for an injunction against a state officer acting in his official capacity. The Supreme Court observed that "a federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when-as here-the relief sought and ordered has an impact directly on the State itself." Id. at 117, 104 S.Ct. at 917. The Supreme Court explicitly left open the question whether a state officer could be sued in his personal capacity under state tort law for money damages. Id. at 111 n. 21, 104 S.Ct. at 913 n. 21 (stating that "nothing in our opinion touches ... cases ... seeking money damages against the individual officer in tort").
 
 
 16
 In Pena v. Gardner, 976 F.2d 469 (9th Cir.1992), we answered this open question. We held that the Eleventh Amendment would not bar federal or pendent state claims seeking damages against a state official acting personally. Id. at 472-74. We have not previously decided, however, how we determine whether a suit against a state officer is a "personal capacity" or an "official capacity" suit.[2]
 
 
 17
 The Supreme Court's decision in Hafer v. Melo, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), guides us in answering this question. In Hafer, the Court differentiated between personal and official capacity suits in the context of federal claims under section 1983. See Hafer, 502 U.S. at 26, 112 S.Ct. at 362. The Court stated, "[t]he phrase 'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." Id.
 
 
 18
 The Hafer analysis may be applied to Ashker's state law claims against Brodeur and Astorga. Applying this analysis, we conclude Brodeur and Astorga were sued in their personal capacities. In his first amended complaint, Ashker alleged: "Each defendant and all of them are being sued individually and in his/her official capacity." Given that Ashker filed the complaint pro per and in forma pauperis, we construe it liberally to mean that he was suing Brodeur and Astorga in their personal capacities, and, in the alternative, in their official capacities.
 
 
 19
 Brodeur and Astorga nevertheless argue that, because California would indemnify them if they were required to pay damages to Ashker, Ashker's suit is not against them in their individual capacities. See California Government Code § 844.6. According to Brodeur and Astorga, because California would, in effect, be paying the damages, California is the real party in interest.
 
 
 20
 Brodeur and Astorga's indemnity argument is foreclosed by Demery v. Kupperman, 735 F.2d 1139 (9th Cir.1984). In that case, we characterized the indemnity arrangement between a state officer and the state as a "purely intramural arrangement" that should not "turn into an extension of sovereign immunity." Id. at 1147 (quoting and citing Ronwin v. Shapiro, 657 F.2d 1071 (9th Cir.1981)). We held that a state should not be able to extend "sovereign immunity to state officials merely by enacting a law assuming those officials' debts." Id.. Following Demery, we hold California's indemnification of Brodeur and Astorga does not render California the real party in interest.
 
 
 21
 We conclude that Ashker sued Brodeur and Astorga in their personal capacities for the state torts of assault and battery and medical malpractice. Because Ashker's suit against Brodeur and Astorga is a personal capacity suit, the Eleventh Amendment does not bar it.[3] Pena, 976 F.2d at 474.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 Although Ashker also sued the California Department of Corrections, as well as other individual prison officials, no answer was filed on behalf of the Department or the State of California, and the action was not prosecuted against either of them. With regard to the individual defendants other than Brodeur and Astorga, all of them dropped out of the case, and the action proceeded only against defendants Brodeur and Astorga
 
 
 [2]
 We did not reach this issue in Pena because the state officer defendants in Pena conceded that they were being sued in their personal capacities. See Pena, 976 F.2d at 473
 
 
 [3]
 To the extent that an alternative claim was asserted against the defendants in their official capacities, that claim is, of course, barred